Donna W. SHERWOOD,
et al., Plaintiffs,

v.

TENNESSEE VALLEY AUTHORITY,
Defendant.

No. 3:12–CV–156–TAV–HBG.

United States District Court,
E.D. Tennessee,
at Knoxville.

Filed Aug. 24, 2015.

Donald K. Vowell, Vowell and Associates, Knoxville, TN, for Plaintiffs.

Edwin W. Small, Frances Regina Koho, Maria Victoria Gillen, Tennessee Valley Authority, Knoxville, TN, for Defendant.

## MEMORANDUM OPINION

THOMAS A. VARLAN, Chief Judge.

This civil action came before the Court upon remand by the Court of Appeals for the Sixth Circuit [Doc. 228]. On appeal, plaintiffs argued defendant Tennessee Valley Authority ("TVA") did not file the correct administrative record for plaintiffs' National Environmental Policy Act ("NEPA") claim. In reviewing plaintiffs' NEPA claim, the Sixth Circuit found TVA had implemented a new rule relating to its vegetation-management practices, specifically that TVA would remove from its easements all trees that are taller, or will mature at a height greater than, fifteen feet (the "fifteen-foot rule"). *Sherwood v. Tenn. Valley Auth.*, 590 Fed.Appx. 451, 456 (2014). It further found that the administrative record submitted by TVA for this Court's review did not reflect consideration of the environmental consequences related to this new rule. *Id.* at 459. It thus remanded the action so that TVA could compile the administrative record relating to decision challenged by plaintiffs—that is, the adoption of the fifteen-foot rule—and this Court could "evaluate the decision's propriety under NEPA." *Id.* at 462–63.

After the action was remanded, the Court ordered that TVA compile the administrative record for the decision challenged by plaintiffs and file that record with the Court [Doc. 230]. In lieu of filing the administrative record, TVA filed a motion to dismiss the case on the ground that plaintiffs' NEPA claim is moot [Doc. 232; *see also* Doc. 234]. A flurry of motions followed, including plaintiffs' motion for summary judgment [Doc. 237], plaintiffs' motion to strike [Doc. 241], plaintiff's motion for leave to file a supplemental brief with respect to the motion to dismiss for mootness [Doc. 243], plaintiffs' motion for discovery [Doc. 245], and plaintiffs' motion to file TVA's FOIA responses [Doc. 255].

The Court first addresses the issue of mootness. TVA asserts that, in 2012, it did not create a separate administrative

record for the adoption of the fifteen-foot rule.[1] And given the Sixth Circuit's determination that the record TVA did submit is inadequate, TVA's Senior Vice President of Transmission suspended use of the fifteen-foot rule and reverted to the right-of-way maintenance practices that were utilized prior to the introduction of the fifteen-foot rule [Doc. 233 p. 2–4]. TVA also submits it is reviewing its practices for the clearing of trees in the buffer zones of TVA rights-of-way and will initiate a *de novo* NEPA review of any new buffer zone clearing practices before adopting them [*Id.*]. For these reasons, TVA argues plaintiffs' NEPA claim is moot.

■ "Courts recognize two kinds of mootness: constitutional mootness and prudential mootness."[2] *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1121 (10th Cir.2010) (citing cases). Constitutional mootness is rooted in Article III of the Constitution, which "confines the power of the federal courts to adjudication of 'cases' or 'controversies.'" *Ky. Right to Life v. Terry,* 108 F.3d 637, 644 (6th Cir.1997) (citations omitted). "The [constitutional] mootness doctrine .... demands a live case-or-controversy when a federal court decides a case." *Id.* (citation omitted).

■ Prudential mootness addresses "not the power to grant relief but the court's discretion in the exercise of that power." *Chamber of Commerce of U.S. v. U.S. Dep't of Energy,* 627 F.2d 289, 291 (D.C.Cir.1980); *see also Greenbaum v. E.P.A.,* 370 F.3d 527, 534–35 (6th Cir.2004) (applying prudential mootness doctrine). In some circumstances, a controversy, though not moot in the strict Article III sense, is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce,* 627 F.2d at 291. The prudential-mootness doctrine "arises out of the court's general discretion in formulating prospective equitable remedies ...," *Bldg. and Constr. Dep't v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1492 (10th Cir.1993), and generally, "applies only to requests for declaratory or injunctive relief," *Rio Grande Silvery Minnow,* 601 F.3d at 1122 (citations omitted).

■ Plaintiff asserts that the doctrine of voluntary cessation, which saves a case from mootness, applies here. Generally, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case." *Cnty. of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (internal quotation marks and citation omitted); *see also United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Ammex, Inc. v. Cox,* 351 F.3d 697, 704 (6th Cir.2003). When a defendant voluntarily ceases the allegedly illegal conduct, the case is not moot unless two conditions are met: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis,* 440 U.S. at 631, 99 S.Ct. 1379 (1979) (ellipsis, internal quotation marks, and citations omitted).

---

1. Plaintiffs ask the Court to strike the argument that TVA thought the categorical checklists it previously submitted addressed the environmental impacts of the fifteen-foot rule [Doc. 241]. The Court finds no need to strike this assertion because it does not factor into the Court's analysis of the mootness question. The motion [Doc. 241] will be **DENIED**.

2. In its briefing, TVA does not identify which mootness doctrine applies here. At the hearing, however, TVA asserted the case is constitutionally moot.

The Supreme Court has stated, "the burden of demonstrating mootness 'is a heavy one.'" *Cnty. of Los Angeles*, 440 U.S. at 631, 99 S.Ct. 1379. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Despite this high burden, the Sixth Circuit has noted that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" and that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir.1990) (citations omitted); *see also Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981–82 (6th Cir.2012); *Rio Grande Silvery Minnow*, 601 F.3d at 1116 ("In practice, however, *Laidlaw's* heavy burden has not prevented governmental officials from discontinuing challenged practices and mooting a case." (footnote omitted)); *Fed'n of Adver. Indus. Representatives v. City of Chicago*, 326 F.3d 924, 929 (7th Cir.2003) (noting that the *Friends of the Earth* standard "is the appropriate standard for cases between private parties, but this is not the view we have taken toward acts of voluntary cessation by government officials[,]" as "we place greater stock in their acts of self-correction, so long as they appear genuine" (citation and internal quotation marks omitted)).

While the Sixth Circuit has not expressly stated whether the voluntary cessation doctrine applies with respect to constitutional or prudential mootness, the Tenth Circuit has indicated the "analysis may be an important component of the overall analysis with respect to both constitutional and prudential mootness.... Under both mootness doctrines, courts must assess the likelihood that defendants will recommence the challenged, allegedly offensive conduct." *Rio Grande Silvery Minnow*, 601 F.3d at 1122 (citations omitted). The Court thus turns to plaintiff's assertion that the NEPA claim is not moot because TVA voluntarily ceased use of the fifteen-foot rule.

Courts across the country consider various factors in determining whether challenged conduct will likely recur, including the reasons for the cessation, the nature of the promise not to resume the challenged conduct, and changes in external circumstances. *See Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, No. C–02–2708 JCS, 2006 WL 2130905, at *4–8 (N.D.Cal. July 28, 2006) (citing cases and engaging in analysis of these factors). The Court considers these and other factors in examining whether the voluntary cessation doctrine applies.

To reiterate, the Court of Appeals for the Sixth Circuit determined TVA adopted a new vegetation-management practice, namely the fifteen-foot rule, and that the record TVA submitted in support of its adoption did not reflect consideration of the environmental consequences of the rule. Admittedly having no other record to submit for review of the adoption of the fifteen-foot rule, TVA suspended its use. The timing of the cessation, however, does not bode well for TVA. TVA did not suspend use of the fifteen-foot rule until after the Court of Appeals reversed this Court's decision granting TVA summary judgment on plaintiffs' NEPA claim and this Court ordered TVA to submit the appropriate administrative record—which, it turns out, was an order TVA could not comply with. *See DeJohn v. Temple Univ.*, 537 F.3d 301, 309–11 (3d Cir.2008) (finding that case was not moot where defendant changed challenged policy after more than a year after commencement of litigation, near the end

of discovery, and less than three weeks before dispositive motion deadline and continued to defend the constitutionality of and need for former policy); *United States v. Gov't of Virgin Islands,* 363 F.3d 276, 285–286 (3d Cir.2004) (finding that "timing of the contract termination—just five days after the United States moved to invalidate it, and just two days before the District Court's hearing on the motion—strongly suggests that the impending litigation was the cause of the termination"). Stated differently, the decision to suspend use of the fifteen-foot rule does not appear to have been the product of "substantial deliberation." *Cf. Jews for Jesus v. Hillsborough Cnty. Aviation Auth.,* 162 F.3d 627, 629 (11th Cir.1998) (holding that action was moot where change in policy that was challenged by plaintiffs was the product of "substantial deliberation").

Even so, TVA has acknowledged the wrongfulness of its conduct in not creating an administrative record [Doc. 240 p. 3 ("TVA did not comply with the procedural requirements of NEPA before it adopted the 15–foot rule in 2012.")], and "[i]t is unreasonable to think that [TVA] would return to conduct it has admitted to this court is constitutionally deficient." *Forest Guardians v. U.S. Forest Serv.,* 329 F.3d 1089, 1095 (9th Cir.2003); *cf. Armster v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 806 F.2d 1347, 1359 (9th Cir.1986) (holding that where Justice Department did not concede that challenged conduct was illegal, bare assertion that it would not recur was insufficient to establish mootness because "[i]t has long been recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based on a recognition of the initial illegality of that conduct"). Moreover, Jacinda B. Woodward, Senior Vice President of Transmission and Power Supply of TVA, has declared that "TVA is

reviewing its practices for the clearing of trees in buffer zones of TVA rights-of-way, and will initiate a de novo NEPA review of any new buffer zone maintenance practices before adopting them" [Doc. 233–1 p. 1]. Plaintiffs criticize this promise, asserting the promise does not address the wire zone of the rights-of-way, only the buffer zone. To understand why promising to review any new buffer zone maintenance practices and not wire zone maintenance practices is not material, one must understand the vegetation-management practices that were in place prior to the adoption of the fifteen-foot rule.

As stated by the Sixth Circuit, "[h]istorically, TVA has removed all trees directly under its power lines, but did not cut down all of the trees in what TVA called the buffer or border zones, the edges of the easements TVA possess." 590 Fed.Appx. at 453. The new fifteen-foot rule, as explained by plaintiffs, eliminated the discretion to leave trees in the buffer zone so that " 'virtually all' of the trees in the right of way, whether in the wire or the buffer zone, [were] removed" [Doc. 293 p. 9]. Because under previous vegetation-management practices and policies—which are not being challenged in this action—TVA could and did clear virtually all of the trees in the wire zone (just as under the fifteen-foot rule), the fact that TVA would conduct a *de novo* NEPA review for only new buffer zone maintenance practices, and not wire zone maintenance practices, is immaterial. Thus, despite the language employed by Ms. Woodward, the Court finds TVA has made a genuine assurance that it has ceased use of the fifteen-foot rule and that it will conduct a NEPA review prior to either re-implementing the fifteen-foot rule or adopting some other vegetation management practice.[3]

---

3. Plaintiffs move the Court to file a supple-    mental brief with respect to TVA's motion to

Accordingly, the Court finds that the doctrine of voluntary cessation would not save this action from mootness. *Accord N. Cascades Conservation Council v. Fed. Highway Admin.*, No. C11–0666JLR, 2011 WL 2976913, at *2–3 (W.D.Wash. July 21, 2011) (finding the voluntary cessation exception not to apply where defendants withdrew challenged decision and represented that no future project would "move forward absent additional analysis and a new decision document"); *but see Forest-Keeper v. Benson*, No. 1:14–CV–00341–LJO–SKO, 2014 WL 4193840, at *5–7 (E.D.Cal. Aug. 22, 2014) (finding that doctrine of voluntary cessation applicable and case was not moot even though Forest Service promised to "undergo a new decision-making process 'should any future decision ... be pursued'" because there was never an admission of wrongdoing and the withdrawal of the challenged action was done in "a very narrow manner"). And having found the doctrine of voluntary cessation does not apply, the Court returns to whether the case is actually moot, constitutionally or prudentially.

Despite plaintiffs assertions, and while seemingly unfair in this case, it appears there is no longer a live case or controversy under Article III. The relief plaintiffs ultimately seek is to declare TVA's past action in adopting the fifteen-foot rule was illegal under NEPA and to enjoin TVA from implementing the same rule without conducting a NEPA review, specifically an environmental impact statement. With respect to the request for a declaratory judgment, "deeming past conduct illegal is ... not permissible as it would be merely advisory." *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir.2013) (citations omitted). In light of TVA's withdrawal of the fifteen-foot rule and assurances that it will conduct appropriate NEPA reviews in the future, the Court finds the declaratory relief plaintiffs seek here is no longer "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (citation omitted). In other words, there is no longer a need to declare that TVA's implementation of the fifteen-foot rule violated NEPA and, to the extent the Court so declared, the declaration would have no effect. As for plaintiffs' request for injunctive relief, the Court does not find that TVA's failure to

dismiss [Doc. 243]. As grounds for this request, plaintiffs assert they need to address the supplemental affidavit of Ms. Woodward, which was improperly filed with the reply [Doc. 244]. They further assert that the reply raises new arguments, particularly with respect to plaintiffs' claim for attorney's fees [*Id.*]. The Court will **DENY** this motion for various reasons. First, the Court held a hearing on all pending motions where plaintiffs had an opportunity to respond to the reply and the supplemental affidavit. Second, the affidavit was not improperly filed with the reply, as it addressed arguments raised by plaintiffs in their response to the motion to dismiss. *See Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S. of Am., Inc.*, No. 3:12–cv–00575, 2013 WL 1736643, at *1 (M.D.Tenn. Apr. 19, 2013) (stating that "courts necessarily may consider new argu-ments in a movant's reply where those arguments address issues raised for the first time in the nonmovant's response" (citation omitted)). Indeed, even plaintiffs have filed affidavits along with a reply brief in this case [*See, e.g.*, Docs. 25, 26]. Finally, the Court does not find it necessary for plaintiffs to address the issue of attorney's fees at this time. An "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim[.]" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (citation omitted). Plaintiffs' request for fees may be litigated after entry of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B) (requiring that the fee petition be submitted "within thirty days of final judgment in the action").

conduct a NEPA review of the fifteen-foot rule will have any demonstrable continuing effect. See Renne v. Geary, 501 U.S. 312, 320–21, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (omission in original) (internal quotation marks and citations omitted)). Thus, this request for relief is moot as well.

■ But even if not moot in the Article III sense, the Court finds the doctrine of prudential mootness applies here because the change in circumstances renders the Court unable to afford plaintiffs any meaningful relief. Ky. Riverkeeper, Inc. v. Rowlette, 714 F.3d 402, 406 (6th Cir.2013) ("[A] change in circumstances that renders a court unable to grant petitioners meaningful relief may prudentially moot an action." (citation omitted)). Again, TVA has provided assurances that it has suspended use of the fifteen-foot rule and that it will conduct an appropriate NEPA review if, and when, it changes its vegetation-management practices. Thus, even if the Court has the power to issue the requested declaration or injunction, considerations of prudence and comity counsel the Court to withhold that relief. See, e.g., Envtl. Prot. Info. Ctr., 2006 WL 2130905, at *12 (finding that, even if not moot as a constitutional matter, action was moot under prudential mootness doctrine because the requested injunction would require the Forest Service to comply with the law, "something the Forest Service is obligated to do regardless of the outcome of [the] case").

Accordingly, for the reasons expressed herein, the Court finds plaintiffs' NEPA claim is moot.[4] The Court will **GRANT** TVA's Motion to Dismiss on the Ground that Plaintiffs' NEPA Claim is Moot [Doc. 232] and **DENY** all other pending motions [Docs. 237, 241, 243, 245, 255]. Plaintiffs' NEPA claim will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

4. The Court's finding that this case is constitutionally moot, and alternatively, prudentially moot, is in accord with decisions from across the country. See Weiss v. Sec'y of the U.S. Dep't of the Interior, 459 Fed.Appx. 497 (6th Cir.2012) (finding NEPA claim moot where project was completed); Conservation Nw. v. Rey, 674 F.Supp.2d 1232 (W.D.Wash. 2009) (determining that withdrawal of challenged action mooted issue because withdrawal was done on principled legal grounds, namely that there was a determination that the challenged action was unlawful under the Endangered Species Act); Nat'l Parks Conservation Ass'n v. U.S. Army Corps of Engineers, 574 F.Supp.2d 1314, 1325–28 (S.D.Fla.2008) (finding NEPA claim moot where permit at issue expired); Willow Creek Ecology v. U.S. Forest Serv., 225 F.Supp.2d 1312 (D.Utah 2002) (in action related to authorization of timber harvest, finding action moot with respect to remaining timber because Forest Service withdrew authorization to harvest the timber after decision in another federal case and moot with respect to timber already harvested because the court could not effectuate relief); W. Mich. Envtl. Action Council, Inc. v. Nuclear Regulatory Comm'n, 570 F.Supp. 1052 (W.D.Mich.1983) (finding case moot where Nuclear Regulatory Commission determined an EIS would have to be filed, which is the relief plaintiff was seeking, and where conduct was not likely to recur because challenged fuel would not be available). But see Del. Audubon Society, Inc. v. Sec'y of the U.S. Dep't of Interior, 612 F.Supp.2d 442 (D.Del. 2009) (finding that case was not moot where defendants voluntarily ceased challenged action for " 'purely practical' reasons, i.e., an attempt to avoid litigation").