RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DONNA W. SHERWOOD; JEROME D. PINN; VANCE SHERWOOD; ANTHONY BILLINGSLEY; JENNIFER PEET; RICHARD EUGENE WILLIAMS; FRANK L. OAKBERG; BONNIE E. OAKBERG; GERRY M. WILLIAMS; HAROLD P. SLOVES; FELICITAS K. SLOVES; SHEILA D. BOOE; THOMAS R. WARREN, JR.; JEFFREY G. SEE,

> *Plaintiffs-Appellants*,

> No. 15-6161

*v.*

TENNESSEE VALLEY AUTHORITY,

> *Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:12-cv-00156—Thomas A. Varlan, Chief District Judge.

Argued: October 19, 2016

Decided and Filed: November 17, 2016

Before: ROGERS and KETHLEDGE, Circuit Judges; MALONEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Donald K. Vowell, VOWELL LAW FIRM, Knoxville, Tennessee, for Appellants. Frances Regina Koho, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Donald K. Vowell, VOWELL LAW FIRM, Knoxville, Tennessee, for Appellants. Frances Regina Koho, Edwin W. Small, Maria V. Gillen, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellee.

_____

[*]The Honorable Paul L. Maloney, United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

ROGERS, Circuit Judge.   This case is before the Sixth Circuit for the second time. Sherwood and the other plaintiffs–appellants claim that TVA was arbitrary and capricious when it implemented a new, mandatory policy to cut down all trees capable of reaching fifteen feet within its right of ways without conducting any environmental review, as required by the National Environmental Policy Act.   On Sherwood's first appeal, we held that TVA had not submitted an administrative record for the new policy and remanded the case so that TVA could compile the record, and so that the district court could evaluate the merits of Sherwood's NEPA claim.   On remand, TVA asserted that it could not produce an administrative record and moved to dismiss the case as moot.   In support, TVA submitted two affidavits stating that the responsible TVA official had suspended use of the policy.   In response, the plaintiffs introduced evidence indicating that TVA had not abandoned the policy.   Relying on TVA's affidavits, the district court dismissed the case as moot, which Sherwood now appeals.   Because record evidence suggests that TVA's challenged policy has a continuing effect, TVA failed to prove that Sherwood's NEPA claim is moot.

I.

This litigation started in 2012, when Donna Sherwood and the other plaintiffs sued the Tennessee Valley Authority (TVA) for violating the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 to 4370m–12 (2012).   Sherwood asserts that TVA implemented a new right-of-way vegetation-maintenance policy without conducting the environmental review required by NEPA.   The new policy, referred to in this litigation as the fifteen-foot rule, requires TVA to cut down all trees within its right of ways that are fifteen-feet tall or have the potential to grow to fifteen feet, whereas TVA right-of-way specialists previously had discretion over which trees to remove, *Sherwood v. TVA* (*Sherwood II*), 590 F. App'x 451, 460 (6th Cir. 2014). Sherwood contends that this policy change is a "major Federal action[] significantly affecting the quality of the human environment," 42 U.S.C. § 4332(C), and that the agency was therefore required to make an environmental impact statement before adopting the fifteen-foot rule.

In the first round of litigation in the district court, TVA moved for summary judgment on the NEPA claim, arguing that it had not implemented a new policy. *Sherwood v. TVA* (*Sherwood I*), 956 F. Supp. 2d 856, 866 (E.D. Tenn. 2013). TVA pointed out that its 2008 Right of Way Maintenance Re-Clearing Guidelines (2008 Guidelines) instruct right-of-way specialists to cut tall-growing trees but allow specialists to leave low-growing trees. *Id.* at 865–66. TVA asserted that its new "policy" was not a policy at all, but was merely guidance to right-of-way specialists that "'low-growing trees' . . . are trees that will not exceed fifteen feet at mature height." *Sherwood I*, 956 F. Supp. 2d at 866. According to TVA, this guidance was nothing more than a clarification of its longstanding practices. *Id.* Furthermore, TVA argued that its 2012 Categorical Exclusion (CE) documentation adequately considered this guidance's environmental impact. *Id.* at 866–67. The district court accepted these arguments and granted TVA's motion for summary judgment. *See id.* at 872. Sherwood appealed that judgment to the Sixth Circuit in 2013. On appeal, we held that TVA had created a new policy, and that the 2012 CE documentation was not TVA's administrative record for its decision to implement the fifteen-foot rule. *Sherwood II*, 590 F. App'x at 460. We remanded the case to the district court to allow TVA to compile an administrative record of the decision and to allow the district court to evaluate the merits of Sherwood's NEPA claim. *Id.* at 462–63.

On remand, instead of compiling an administrative record, TVA filed a motion to dismiss the case as moot. In support of the motion to dismiss, TVA stated that it "did not create in 2012 a separate administrative record for the challenged decision." TVA asserted that an administrative record was not necessary, however, because Sherwood's NEPA claim was moot, as TVA had "suspended use of the 15-foot rule and reverted to the right-of-way maintenance practices that were utilized prior to the introduction of the 15-foot rule." The only evidence TVA offered to support this assertion consisted of two affidavits (the Woodward affidavits) containing declarations by Jacinda Woodward, TVA's Senior Vice President of Transmission and Power Supply, who is responsible for TVA's right-of-way maintenance program. TVA filed the first affidavit on December 5, 2014, and the second on December 23, 2014. Both state the same thing: "I have completely suspended use of the '15-foot rule' in TVA transmission line rights-of-way. TVA has reverted to the right-of-way maintenance practices applicable to the wire and buffer zones on TVA rights-of-way that were utilized prior to the introduction of the

15-foot rule. . . . TVA is reviewing its practices for the clearing of trees in buffer zones of TVA rights-of-way, and will initiate a de novo NEPA review of any new buffer zone maintenance practices before adopting them."[1]

Following TVA's motion to dismiss, Sherwood filed a motion for summary judgment, requesting declaratory and injunctive relief based on TVA's alleged NEPA violation and arguing that the case was not moot. The district court gave Sherwood permission to submit supplemental evidence in support of the motion for summary judgment. In response, Sherwood first filed an affidavit (the Anderson affidavit) containing declarations by Billy Anderson, a landowner in Paducah, Kentucky. In the affidavit and the attached exhibits, Anderson describes that before June 1, 2015, TVA had only ever trimmed one of the trees within its right of way on his property. Then, in 2014, a TVA right-of-way specialist told him that the agency would be removing all of the trees in the right of way, pursuant to the fifteen-foot rule. Although TVA did not end up removing the trees in 2014, on June 1, 2015, the agency cut down all twenty-seven trees within the right of way, including trees in both the wire zone and the buffer zone. The trees were between seven and sixty feet tall—the majority between seven and seventeen feet.

Sherwood also filed affidavits containing declarations by Shiras Walker and Anthony King. These affidavits and the accompanying exhibits describe the TVA right of way in the Land Between the Lakes National Recreation Area (LBL Recreation Area). Walker did a fly-over of the area on July 23, 2015. Updates from the Recreation Area's website attached to Walker's affidavit indicate that TVA cleared a thirty-one-mile stretch of right of way in the area between February and July of 2015. Before-and-after photos, compiled from Walker's fly-over in 2015 and Google Earth images from 2013, show that the right of way's buffer zone was clear-cut and mulched. King surveyed several portions of the Recreation Area on foot on July 31 and August 1, 2015. King stated that, for the most part, "the right-of-way had been recently cleared to a width of 150 or more feet, with the buffer zones being completely eliminated."

In response to Sherwood's supplemental evidence, TVA submitted two affidavits containing declarations by Michael Buelow. Buelow was the right-of-way specialist who

---

[1]The wire zone is the area directly beneath TVA's power lines, which extends out to a buffer zone along the outside edge of both sides of TVA's right of way.

oversaw TVA's vegetation management on the Anderson property and the LBL Recreation Area. In the first affidavit, Buelow discusses the Anderson property: "In my opinion, all of the mature fruit trees in the wire zone had to be removed, but the row of younger, smaller fruit trees on the northern edge of the right-of-way could remain." Buelow also states that he authorized the crew to remove the smaller trees on Anderson's property only after Anderson himself requested that the trees come down "so that [TVA] would never have to come back." In the second affidavit, Buelow discusses the Recreation Area: "Several factors prompted me to decide to clear the right-of-way across Land Between the Lakes to its full width (150 feet)," including variable terrain, "considerable dense regrowth along the edges of the right-of-way," and the fact that "the transmission structures on th[e] line [were] older, wooden, 'H-frame' structures[,] which spread the conductors out over more area than more modern metal lattice or single pole structures." Furthermore, Buelow states that his decision "was not influenced by the rescinded" fifteen-foot rule.

After Sherwood submitted her supplemental evidence and TVA filed its counterevidence, the district court granted TVA's motion to dismiss the case as moot. *Sherwood v. TVA* (*Sherwood III*), 124 F. Supp. 3d 779, 786 (E.D. Tenn. 2015). The court first rejected Sherwood's argument that, even if TVA abandoned the fifteen-foot policy, the doctrine of voluntary cessation supported the existence of a live case or controversy. *Id.* at 785. The court found that TVA "made a genuine assurance that it has ceased use of the fifteen-foot rule and that it will conduct a NEPA review prior to either re-implementing the fifteen-foot rule or adopting some other vegetation management practice." *Id.* at 784. In reaching that conclusion, the court did not mention Sherwood's supplemental evidence or TVA's counterevidence, or question the sincerity of the Woodward affidavits. The district court also rejected Sherwood's argument that TVA had not adequately assured the court that TVA would not continue its wrongful conduct because the Woodward affidavits promise to conduct NEPA review before changing TVA's buffer-zone practices but not TVA's wire-zone practices. *Id.* The court reasoned that Woodward's distinction between the buffer zone and the wire zone was "immaterial" because "under previous vegetation-management practices . . . TVA could and did clear virtually all of the trees in the wire zone (just as under the fifteen-foot rule)." *Id.* Thus, any change to TVA's wire-zone practices would not impact Sherwood's legal interests.

After rejecting Sherwood's voluntary-cessation argument, the district court held that Sherwood's NEPA claim was constitutionally moot. *Id.* at 785. The court reasoned that, because TVA had abandoned the fifteen-foot policy, a declaratory judgment would only "deem[] past conduct illegal," which would be an impermissible advisory opinion. *Id.* (quoting *ACLU of Mass. v. United States Conference of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013)). Furthermore, the court held that Sherwood's request for an injunction was moot because, given that TVA had abandoned the fifteen-foot policy, TVA's failure to conduct an environmental review before implementing the policy had no "demonstrable continuing effect." *Id.* at 785–86. The court also held, in the alternative, that Sherwood's NEPA claim was prudentially moot, noting that "the change in circumstances renders the [c]ourt unable to afford plaintiffs any meaningful relief." *Id.* at 786. Sherwood now appeals the district court's decision to dismiss the case as moot.

II.

Because TVA has failed to prove that the fifteen-foot rule has no continuing effect, Sherwood's NEPA claim is not moot. When a defendant claims that its voluntary cessation of the challenged activity moots a case, it bears the burden of proving mootness. *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005). Thus, TVA was required to demonstrate that the fifteen-foot rule has no "demonstrable continuing effect," *Spencer v. Kemna*, 523 U.S. 1, 18 (1998), before the district court could properly dismiss this case as moot. The Woodward and Buelow affidavits, considered in light of Sherwood's supplemental evidence, were not enough to establish mootness.

Even if TVA has formally abandoned the fifteen-foot policy, as the district court found it has, *see Sherwood III*, 124 F. Supp. 3d at 784, evidence in the record suggests that TVA has not reverted back to the right-of-way practices it used before adopting the rule. TVA's pre-fifteen-foot-rule policies, pursuant to the 2008 Guidelines, included "leaving a 25-foot buffer zone on each side" of 200-foot right of ways; "leaving a 12.5-foot buffer zone on each side" of 175-foot right of ways; cutting "[t]all-growing trees"; and giving right-of-way specialists discretion over whether to remove "[l]ow-growing trees." Furthermore, TVA previously "made exceptions for some taller-growing trees where the landowners had said they would control tree height." *See*

*Sherwood II*, 590 F. App'x at 454.  And as demonstrated by ample evidence in the record, TVA did not always strictly follow its policies, so that plenty of "tall-growing" trees remain in TVA's right of ways, including in the wire zone.

Sherwood's supplemental evidence suggests that TVA's recent practices may be more consistent with the fifteen-foot rule than with these pre-fifteen-foot-rule policies.  For example, in June 2015, six months after the Woodward affidavits declared that TVA had abandoned the fifteen-foot policy, TVA cut down every tree—some as low as seven feet—from its right of way on the Anderson property, including trees in the buffer zone.  TVA had historically allowed Anderson to keep his fruit trees pruned to seventeen feet.  Additionally, between February and July of 2015, two to seven months after TVA claimed to have abandoned the fifteen-foot rule, the agency clear-cut its right of way on the LBL Recreation Area, whereas it had previously left trees in this right of way's buffer zone.

This consistency between the "abandoned" fifteen-foot rule and TVA's recent practices cannot be explained away by TVA's argument that right-of-way specialists are merely exercising the discretion they have always had.  This argument is awfully close to TVA's assertion on the first appeal that there was no new "policy"—that TVA's new practices were simply a continuation of its longstanding vegetation-management policies.  *See Sherwood II*, 590 F. App'x at 456–57.  As on the first appeal, this argument does not stand.  Although specialists previously had discretion (on paper) over whether to remove low-growing trees, in practice the agency left low-growing trees before it implemented the fifteen-foot rule.  And although the 2008 Guidelines mandate that specialists remove tall-growing trees, in practice specialists left many tall-growing trees in TVA's right of ways before the agency adopted the fifteen-foot policy.  There is evidence in the record that TVA is currently removing all tall-growing and low-growing trees from its right of ways, consistently with the fifteen-foot rule and inconsistently with its prior practices.  This evidence indicates that the fifteen-foot policy has some continuing effect, and therefore the case is not constitutionally moot.

There is a second reason why Sherwood's NEPA claim is not constitutionally moot: even if TVA has abandoned the fifteen-foot rule, the agency's promise to perform NEPA review before changing its buffer-zone maintenance policies is not an adequate assurance that its

challenged conduct will not recur.  In our first *Sherwood* opinion, we stated that "[h]istorically, TVA has removed all trees directly under its power lines."  *Sherwood II*, 590 F. App'x at 453. The district court inferred from this language that the fifteen-foot rule had no effect on the wire zone, as TVA already cleared the wire zone under its previous practices.  However, there is ample evidence in the record that TVA has often left trees in the wire zone, which proves our factual statement in *Sherwood II* wrong.  Rather, the agency has historically left trees in the wire zone of some of its right of ways.  So the agency's decision to implement the fifteen-foot policy—which mandates that right-of-way specialists remove all trees capable of reaching fifteen-feet tall—affected trees in the wire zone.  It follows, then, that TVA must conduct NEPA review before reapplying the policy to any part of its right of ways, and TVA's assurance that it will comply with NEPA before changing its buffer-zone maintenance policies is not enough to satisfy the court that TVA's challenged conduct will not recur.

Furthermore, the district court abused its discretion to the extent it relied on a "prudential," or equitable, mootness doctrine to dismiss Sherwood's NEPA claim.  The doctrine is based on the Supreme Court's opinion in *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953).  In *W. T. Grant Co.*, the Court reasoned that, when a case is not constitutionally moot, a court may still refuse to enjoin the defendant's illegal conduct as a matter of equitable discretion if there is only a "mere possibility" of recurrent violation.  *Id.* at 633.  The Court instructed lower courts to consider "the bona fides of the [defendant's] expressed intent to comply, the effectiveness of the [defendant's] discontinuance[,] and[] in some cases, the character of the [defendant's] past violations."  *Id.*  Applying these principles, the record shows much more than a "mere possibility" that TVA's challenged conduct will recur (or is continuing).  Because the Woodward affidavits do not state that TVA will conduct NEPA review before changing its wire-zone policies, TVA's assertion that it will comply with NEPA does not appear adequate. Furthermore, Sherwood's supplemental evidence suggests that the agency has not completely abandoned the fifteen-foot rule, or that the abandonment has not been fully implemented.

Because Sherwood's NEPA claim appears neither constitutionally nor equitably moot, we remand the case to the district court.  If TVA seeks to prove that this case is moot on remand,

it must clearly demonstrate that the fifteen-foot policy has no continuing effect. Fully fleshing out any future mootness claim may require jurisdictional discovery.

On remand the district court should require TVA to compile an administrative record of the agency's decision to implement the fifteen-foot rule, as directed in our previous decision. The fact that "TVA did not create in 2012 a separate administrative record for the challenged decision" does not mean the agency does not have anything for the district court to review. Under § 706 of the Administrative Procedure Act, 5 U.S.C. § 706, the administrative record for judicial review consists of all materials that were before the agency when it made the challenged decision. *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). If the agency does not turn over any such material, the court may order the agency's decision-maker to testify about the agency's rationale. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Thus, it is irrelevant that TVA does not have a pre-prepared record that reviews the environmental impact of the fifteen-foot rule. The agency must compile whatever documentation it has from its decision-making process and produce those materials in the district court proceedings on remand.

## III.

The judgment of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.