RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DONNA W. SHERWOOD; JEROME D. PINN; VANCE
SHERWOOD; ANTHONY BILLINGSLEY; JENNIFER PEET;
RICHARD EUGENE WILLIAMS; FRANK L. OAKBERG;
BONNIE E. OAKBERG; GERRY M. WILLIAMS; HAROLD
P. SLOVES; FELICITAS K. SLOVES; SHEILA D. BOOE;
THOMAS R. WARREN, JR.; JEFFREY G. SEE,

> No. 21-5927

　　　　　　　　　　　*Plaintiffs-Appellants*,


*v.*


TENNESSEE VALLEY AUTHORITY,

　　　　　　　　　　　*Defendant-Appellee*.

─────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:12-cv-00156—Thomas A. Varlan, District Judge.

Argued: July 21, 2022

Decided and Filed: August 22, 2022

Before: ROGERS and KETHLEDGE, Circuit Judges, and MALONEY, District Judge.

─────────────────

## COUNSEL

**ARGUED:** Donald K. Vowell, THE VOWELL LAW FIRM, Knoxville, Tennessee, for Appellants. Frances Regina Koho, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Donald K. Vowell, THE VOWELL LAW FIRM, Knoxville, Tennessee, for Appellants. Frances Regina Koho, David D. Ayliffe, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

ROGERS, Circuit Judge.   This appeal is the latest installment in a decade-long dispute over the way in which the Tennessee Valley Authority (TVA) clears trees in the rights-of-way it holds on the plaintiffs' private property.   The district court enjoined TVA from practicing a particular tree-clearance practice, referred to as the "15-foot rule," until TVA prepared an Environmental Impact Statement (EIS) as required by the National Environmental Policy Act. At issue here is the district court's dissolution of that injunction, which was based in part on the court's finding that TVA complied with the injunction by completing an EIS and, in the alternative, on equitable grounds because the new TVA policy adopted following completion of the EIS is different from the 15-foot rule.   The injunction should not have been dissolved, however, because the district court has not yet determined, in light of the administrative record, whether TVA took a hard look at the environmental consequences of its action, and the agency's action has not been shown to be so different from the 15-foot rule as to warrant a whole new suit to obtain judicial review.

The history of this litigation is fully described in *Sherwood I* and *Sherwood II*; the relevant history for purposes of this appeal is summarized as follows.   *See Sherwood v. Tennessee Valley Auth.*, 590 F. App'x 451, 453 (6th Cir. 2014) (*Sherwood I*); *Sherwood v. Tennessee Valley Auth.*, 842 F.3d 400 (6th Cir. 2016) (*Sherwood II*).

This dispute started when TVA began removing all trees from the buffer zones surrounding power lines, which in this litigation has been referred to as the "15-foot rule." "Historically, TVA has removed all trees directly under its power lines, but did not cut down all of the trees in what TVA called buffer or border zones, the edges of the easements TVA possesses.   [But] [i]n 2012, several of the plaintiffs received notices that TVA would be removing dozens of tall, mature trees from the easements over their properties." *Sherwood I*, 590 F. App'x at 453.   The plaintiffs claimed that the 2012 notices were the result of a 15-foot rule, which provided that TVA would remove all trees from rights-of-way if the trees had the potential to grow over 15 feet tall, even if the trees did not pose a threat to the power lines.   *Id*. at

455-56. TVA asserted, however, that the 15-foot rule was not a new policy, and merely reflected the standard clearing practice that TVA had engaged in for years. *Id*. at 460. The plaintiffs brought several claims, including the claim at issue here—that the National Environmental Policy Act (NEPA) required the TVA to prepare an EIS for the 15-foot rule because it was a new major federal action. *Id*. at 457. The district court granted TVA's motion to dismiss the NEPA claim based on the purported administrative record presented by TVA. *Id*. at 456-57. We held, however, that TVA did not in fact present "the proper administrative record" and ordered TVA to do so on remand. *Id*. at 460.

Instead of producing the administrative record on remand, TVA "asserted that it could not produce an administrative record and moved to dismiss the case as moot" due to the fact that TVA "ha[d] suspended use of the policy." *Sherwood II*, 842 F.3d at 402. The district court granted TVA's motion to dismiss, and we reversed. We noted that the plaintiffs had provided ample evidence that enforcement of the 15-rule was ongoing, such as declarations from witnesses who had recently witnessed all trees cleared from buffer zones. *Id*. at 404. We again instructed the district court to "require TVA to compile an administrative record of the agency's decision to implement the fifteen-foot rule, as directed in our previous decision." *Id*. at 407.

The present appeal stems from what occurred on remand from *Sherwood II*. TVA filed the administrative record, and then filed a motion for judgment in the plaintiffs' favor. TVA conceded that the 15-foot rule violated NEPA "because it was a major federal action significantly affecting the quality of the human environment that was not properly studied under NEPA prior to its implementation." TVA added that it had published a notice in the Federal Register to inform the public that it would prepare a programmatic EIS to evaluate the 15-foot rule. TVA stated that it "consents to the entry of a judgment enjoining TVA from further implementing the 15-foot rule until it prepares and publishes, pursuant to NEPA, an EIS or otherwise complies with NEPA." Finally, TVA agreed that the plaintiffs were entitled to attorney's fees and costs related to the NEPA issue. The plaintiffs filed a motion for sanctions and an evidentiary hearing to develop the record with respect to TVA's "wrongful conduct in falsely advising the Court that it had suspended the 15-foot rule." The plaintiffs further requested leave to file a fourth amended complaint and join an additional plaintiff.

The district court held a hearing and issued an injunction in 2017, but denied the plaintiffs' motion for leave to file a fourth amended complaint to join an additional plaintiff and the plaintiffs' motion for sanctions and an evidentiary hearing. First, the court concluded that the additional plaintiff's "proposed claims would not survive a motion to dismiss because the requested additional relief is not available under NEPA" and that joining the plaintiff would cause prejudice and delay. Second, the district court concluded that sanctions were unnecessary because the plaintiffs could seek attorney's fees under the Equal Access to Justice Act. The court also declined to issue sanctions that would "impose limitations on which of [TVA]'s employees participate in the environmental review."

The district court proceeded to issue an injunction that included several of the requirements requested by the plaintiffs, and most relevantly, the court agreed with the plaintiffs that court would retain jurisdiction over the injunction so that it could review the eventual EIS. The court observed that some courts chose to retain jurisdiction to address the sufficiency of the EIS and decided to "retain jurisdiction over the injunction beyond defendant's representation that it has issued an EIS." The court proceeded to explain the requirements that must be met before the court would dissolve the injunction. TVA had to first comply with NEPA by issuing an EIS, and could then file a motion for dissolution. At that point, the district court would decide "whether there is a change in circumstances that justifies dissolving the injunction without reviewing the EIS." A "change in circumstances" would have occurred if, for example, TVA chose to implement a policy that was "very different from the 15-foot rule." However, despite the court's representations that it was "retain[ing] jurisdiction over reviewing the EIS," the court proceeded to state that the plaintiffs would need to file a separate lawsuit to challenge the sufficiency of the EIS. The court stated "[p]resumably, should the Court decide not to retain jurisdiction, and plaintiffs do not believe the EIS is adequate, plaintiffs would file another lawsuit challenging the new policy and this Court would engage in the same analysis as it would have in retaining jurisdiction." The injunction itself stated that:

> TVA is ENJOINED from further implementing the transmission line right-of-way vegetation management practice that has come to be known in this litigation as the "15-foot rule" until TVA has prepared and published an environmental impact statement pursuant to the National Environmental Policy Act ("NEPA") . . . shall

submit a request for dissolution of the injunction after completion of the procedural steps necessary to comply with NEPA.

The injunction also provided that the district court would "retain[] continuing jurisdiction to enforce this Order" and "to determine whether the injunction should be dissolved." After a judicially-hosted settlement conference, TVA agreed to pay the plaintiffs $600,000 in attorney's fees, and the order included that it "serves to dismiss all remaining motions and any remaining claims related to attorney's fees in this action with prejudice." The plaintiffs did not then appeal the issues that the district court decided against them, such as the motions for a sanctions and to file a fourth amended complaint.

In 2019, TVA moved to dissolve the injunction. TVA noted that it had held a statutory public comment period and then issued a final programmatic EIS in August 2019. TVA claimed that it rejected the 15-foot rule and instead adopted a plan called Alternative C, which it named "Alternative C: Condition-Based Control Strategy—End-State Meadow-Like, Except for Areas Actively Maintained by Others (Compatible Trees Allowed)." The plaintiffs argued in response that the injunction should not be dissolved because the EIS "does not take a 'hard look' at the environmental consequences of TVA's proposed action and thus does not qualify as an 'environmental impact statement.'" The plaintiffs further argued that Alternative C was not a new policy, but instead was the "functional equivalent of the 15-foot rule," and the plaintiffs moved to require TVA to compile the administrative record supporting its choice of Alternative C.

The district court granted TVA's motion to dissolve the injunction and denied as moot the plaintiffs' motion to compile the administrative record that supported the adoption of Alternative C. First, the district court concluded that a programmatic EIS was acceptable in this situation due to the "large region" at issue, so TVA could prepare a general, programmatic EIS and then later conduct more local analyses for specific sites. Second, the district court rejected the plaintiffs' argument that it was required to conduct a hard look analysis of whether TVA did in fact comply with NEPA. The court held that TVA consequently "satisfied the terms of the injunction order" through its "effort to comply with the procedural requirements of NEPA, which was the purpose of the Court's injunction order." The district court held in the alternative that it

was no longer "equitable to enforce the injunction" due to "a significant change in factual circumstances": namely, the fact that Alternative C was a different policy from the original 15-foot rule. The court thus concluded that if the plaintiffs wanted to challenge Alternative C, they could do so through new litigation. The plaintiffs timely appealed.[1]

As an initial matter, the district court's alternative holding—that the injunction should be dissolved because Alternative C is sufficiently distinct from the 15-foot rule—does not hold up due to the very close (albeit not identical) nature of Alternative C and the 15-foot rule. The district court concluded that even if TVA had failed to satisfy the terms of the injunction, the court "would nonetheless dissolve the injunction . . . because continued enforcement of the injunction, after TVA has selected a new alternative, is no longer equitable." The court further noted that "had TVA merely created planning documents to support its 15-foot rule, the Court might have come to a different conclusion." But that appears to be what happened here. Though we do not have the administrative record before us, from the face of the EIS itself both the 15-foot rule and Alternative C cause the same result that formed the basis for this action in the first place—namely, preventing the plaintiffs from growing or maintaining any trees on their private property in the buffer zones.

The only notable difference between the 15-foot rule and Alternative C is that Alternative C allegedly permits landowners to keep some trees in the rights-of-way, but the EIS later contradicts itself in several ways, including by failing to include any trees at all in the list of approved plants under Alternative C. According to the plaintiffs, the 15-foot rule entailed TVA's chopping down (or threatening to chop down) any trees in the rights-of-way if those trees had the potential to grow above 15 feet. TVA claims that the EIS rejected the 15-foot rule, and that instead under Alternative C the TVA can "allow compatible trees" on private land or other land not "maintained" by TVA. But despite general statements about private landowners' being able to keep "compatible trees," the EIS later contradicts itself by including an appendix of

---

[1]TVA filed a motion to dismiss for lack of jurisdiction due to an untimely appeal, but we denied the motion because the plaintiffs' appeal "was filed within 60 days of the district court's ruling on a timely motion to amend the judgment appealed from."

compatible vegetation that does not, in fact, list any trees.  TVA failed to respond adequately to this allegation either in its brief or at oral argument.

A closer look at the EIS reveals that Alternative C is likely just a differently packaged version of the 15-foot rule.  On the surface, Alternative C appears to allow "compatible trees."  The EIS repeatedly refers to Alternative C as "Alternative C – Condition-Based Control Strategy – End-State Meadow-like, Except for Areas Actively Maintained by Others (Compatible Trees Allowed)."[2]  One description of Alternative C includes a statement that "[u]nder this alternative TVA would have the option to allow compatible trees to remain in areas actively maintained by others . . . Compatible species of trees and shrubs are listed in Appendix H."  EIS Report at 73.  Other statements, however, contradict the notion that any trees would be permitted at all.  Within the same description as the statement above, for example, the EIS contains multiple references to the fact that Alternative C would create a "*low-growing* plant community."  *Id*. (emphasis added).  In a chart comparing the various alternatives, Alternative C's impact on vegetation is described as "[i]mpact to vegetation associated with the direct loss of forest lands," and "floor vegetation would be managed to a meadow-like state."  *Id*. at 77.  The most pointed example of these contradictions is the statement that compatible trees are listed in Appendix H.  *Id*. at 73.  Appendix H is titled "List of Compatible Trees and Shrubs."  EIS Appendices at 944.  The list, however, which contains about 50 species of vegetation, features flowers, bushes, and small shrubs, but does not appear to include a single species of tree.  *Id*. at 946-49.  At oral argument, TVA failed to point to any trees listed in Appendix H.  The district court thus abused its discretion when it held in the alternative that Alternative C is factually distinct enough from the 15-foot rule to make enforcement of the injunction no longer equitable.[3]

---

[2]Tennessee Valley Authority, *Transmission System Vegetation Management Final Programmatic Environmental Impact Statemen*t (August 2019), available at https://tva-azr-eastus-cdn-ep-tvawcm-prd.azureedge.net/cdn-tvawcma/docs/default-source/default-document-library/site-content/environment/environmental-stewardship/environmental-reviews/transmission-system-vegetation-management-program/final_tva_transmission_system_vegetation_management_peis_no_appendices.pdf?sfvrsn=86634c23_2  [hereinafter "EIS Report"].

[3]It is possible that upon review of the entire administrative record supporting the adoption of Alternative C, it could become apparent that Alternative C and the 15-foot rule are, in fact, materially different policies.  However, the district court denied the plaintiffs' request to compile the administrative record, and on the limited record before us in this appeal, Alternative C and the 15-foot rule are arguably indistinguishable with respect to the impact on the plaintiffs' trees.

The fact that Alternative C and the 15-foot rule are arguably indistinguishable indicates that the district court abused its discretion when it dissolved the injunction without compiling the administrative record and conducting a hard-look review of whether the EIS complied with the National Environmental Policy Act ("NEPA"). NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") when agencies undertake major actions. 42 U.S.C. § 4332(C). "'NEPA itself does not mandate particular results' . . . [r]ather, NEPA imposes only procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756-57 (2004) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). The NEPA procedures "require that agencies take a 'hard look' at environmental consequences." *Sierra Club v. United States Forest Serv.*, 828 F.3d 402, 407 (6th Cir. 2016) (quoting *Robertson*, 490 U.S. at 350).

The dispute between TVA and the plaintiffs on this point boils down to whether the hard-look review of Alternative C should occur in this litigation or in a separately filed litigation, but given the similarities between Alternative C and the 15-foot rule, the plaintiffs have the better argument. The district court noted that the plaintiffs could challenge Alternative C by "fil[ing] another lawsuit challenging the new policy and this Court would engage in the same analysis as it would have in retaining jurisdiction." TVA agrees, and admits that the plaintiffs have the right to obtain a hard-look review of Alternative C in federal court. TVA argues, however, that because TVA fulfilled the terms of the injunction here, the examination of Alternative C should not be tied to the dissolution of the injunction in this case and should instead be addressed in a separate litigation.

The fact that Alternative C would likely have the same negative impact on plaintiffs that caused them to seek an injunction in the first place makes it more suitable for the hard look at Alternative C to be conducted on remand here instead of in a separate litigation. The terms of the injunction provided that it would be dissolved when TVA completed "the procedural steps necessary to comply with NEPA" and published an EIS. "An EIS must detail, among other things, 'the environmental impact of the proposed action,' 'any adverse environmental effects which cannot be avoided' in implementing the proposal, and any available alternatives." *Sierra*

*Club*, 828 F.3d at 407 (quoting 42 U.S.C. § 4332(2)(C)).  TVA did go through a public comment period and published a 328-page EIS that weighs the merits (and environmental impact of) several vegetation-management plans and explains why TVA chose Alternative C.  But given Alternative C's similarities to the 15-foot rule, the district court should have interpreted the terms of the injunction to require the compilation of the administrative record and a hard-look review at Alternative C before dissolving the injunction based on TVA's compliance with NEPA.  The plaintiffs requested and received the injunction in order to prevent TVA from implementing the 15-foot rule until it complied with NEPA.  Since Alternative C arguably has the same impact on the plaintiffs as the 15-foot rule, the court should make an actual finding on whether TVA has complied with NEPA before dissolving the injunction.  In doing so, the district court may address the various "hard-look" arguments raised in pages 59-102 of the plaintiffs' brief.

The plaintiffs then argue that the district court abused its discretion by requiring TVA to conduct only site-specific reviews (instead of site-specific EISs), but the plaintiffs do not point to any law in this circuit that would require TVA to conduct site-specific EISs for each local project after already having completed a programmatic EIS.[4]  NEPA regulations allow agencies to "tier" their EISs and environmental assessments "when it would eliminate repetitive discussions of the same issues."  40 C.F.R. § 1501.11(a).  Tiering refers to the fact that when there is a programmatic EIS that covers a federal action as a whole, agencies are permitted to create a "program, plan, or policy statement or assessment of lesser or narrower scope or . . . a site-specific statement or assessment" for smaller, localized projects that fall under the umbrella of the programmatic EIS.  40 C.F.R. § 1501.11(c)(1).  The regulation makes clear that the site-specific statement or assessment does not necessarily need to be an EIS itself—instead, "the tiered document needs only to summarize and incorporate by reference the issues discussed in the broader document" and "shall concentrate on the issues specific to the subsequent action."  40 C.F.R. § 1501.11(b).  Recent updates to the regulations confirm that site-specific assessments

---

[4]TVA filed a motion to amend the court's opinion and order dissolving the injunction, claiming that the court misstated the type of reporting required for specific sites that are covered more generally by the EIS.  The court had stated that TVA needed to complete a site-specific EIS for each new project, while TVA argued that it was required only to conduct a "site-specific environmental *review* . . . for subsequent actions tiered from a programmatic EIS."  The district court agreed and changed its references to "site-specific EIS" to "site specific review(s)."

are not required to take the form of an EIS.  The final rule explaining the text of 40 C.F.R. § 1501.11 in its current state refers to "the typical use of EAs [environmental assessments] as a second-tier document tiered from an EIS."  *Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act*, 2020 WL 4001797, 85 Fed. Reg. 43304, 43324 (July 16, 2020).  Furthermore, the district court did not rule out the possibility that TVA could be required to prepare a site-specific EIS if that was warranted by the circumstances.  It was not an abuse of discretion for the district court to refer to site-specific reviews when a site-specific EIS may not be required in every localized situation.

Finally, we do not address the plaintiffs' additional arguments, raised only in the most cursory manner in the plaintiff's opening brief at pages 106-07, seeking discovery, seeking an evidentiary hearing, challenging the district court's failure to order sanctions stemming from TVA's alleged litigation misconduct, and challenging the district court's declining to add Mr. Anderson as a plaintiff.  These arguments are arguably forfeited due to the plaintiffs' failure to develop the arguments in their opening brief.  *See United States v. Graves*, 806 F. App'x 414, 416 (6th Cir. 2020) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).  Moreover, we do not address whether any or all of these issues may have been forfeited by the plaintiffs' not having appealed the district court's 2017 order and judgment.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.