NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0086n.06

No. 10-1313

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 25, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| JULIE WEISS; NICOLE MOON; EMMA KINNARD; JAMES H. DUNCAN; LEA'ANNA LOCEY; SCOTT ELLIOTT; RONNIE WHITELOW, ) ) ) ) | |
| Plaintiffs-Appellants, ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. ) ) | |
| SECRETARY OF THE U.S. DEPARTMENT OF THE INTERIOR; REBECCA A. HUMPHRIES, Director State of Michigan, Department of Natural Resources; CITY OF BENTON HARBOR, ) ) ) ) ) | |
| Defendants-Appellees; ) ) | |
| HARBOR SHORES COMMUNITY REDEVELOPMENT INCORPORATED, ) ) | |
| Intervenor-Appellee. | |

Before: DAUGHTREY, COOK, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Julie Weiss and other concerned citizens sued to stop a development project that she says has caused environmental damage. The district court rejected her challenges. We affirm as to some of Weiss's claims and hold that we are without power to decide the others.

No. 10-1313
*Weiss v. Secretary of the U.S. Department of the Interior*

I.

As part of a broad redevelopment scheme in Benton Harbor, Michigan, the city government leased part of its Jean Klock Park to a developer for conversion into a golf course. In exchange, the City received other land that the developer agreed to improve and incorporate into a system of trails. Julie Weiss and other Park users sued the City and two federal agencies, the National Park Service and the Army Corps of Engineers, that had approved the project. The district court granted summary judgment to the defendants on some of Weiss's claims and dismissed others for lack of standing. This appeal followed.

II.

A.

Before addressing the merits, we must ensure that Article III gives us the power to decide Weiss's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). (We focus on Weiss but the other plaintiffs are materially similar.) We begin with standing. Weiss must show that she has constitutional standing for every claim, under every statutory provision, she brings. *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008). To establish standing, Weiss must show that the agencies caused her a redressable injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Her grievance cannot be general, "seeking relief that no more directly and tangibly benefits [her] than it does the public at large." *Id.* at 573–74.

The district court held that Weiss lacked standing for certain claims. We agree as to one. Weiss alleges that the land exchange violated the Land and Water Conservation Fund Act. The market-value provision of the Act requires the substitute "recreation properties" to have "at least

-2-

equal fair market value" as the leased park. 16 U.S.C. § 460*l*-8(f)(3). This provision ensures that states do not trade high-value recreational land—which they acquired or improved with federal money—for low-value land. The provision thus protects federal and state revenues from misuse. Weiss's claim based on this provision, therefore, is merely the general one, common to any taxpayer, "that the public moneys be not wasted." *Lujan*, 504 U.S. at 574 (citation omitted).

Weiss contends that her injury is not general because she has a non-fiscal interest: exposing the "suspicious nature" of the appraisals. But this goal is no more particular to her than her interest in the market value of the government's land. Weiss alleges harm only to "every citizen's interest in proper application of the Constitution and laws." *Lujan*, 504 U.S. at 573. Indeed, her interest in exposing the inadequacy of the appraisals is merely derivative of her interest as a taxpayer. A suspicious appraisal is problematic because it undervalues the land, causing the government to waste money. Weiss therefore lacks standing to assert her market-value claim under the Land and Water Conservation Fund Act. *See id.* at 573–74.

The district court erred, however, in concluding that Weiss lacked standing for another of her claims: that the land swap did not "accord with" Michigan's Outdoor Recreation Plan. Weiss alleges that she uses the Park and that the swap deprives her of the recreational opportunities that she formerly enjoyed, without providing adequate substitutes. "[T]hat contention states an injury in fact." *Meister v. United States Dep't of Agric.*, 623 F.3d 363, 370 (6th Cir. 2010). Weiss has standing to assert this claim.

B.

Weiss must also show that her claims are not moot. The agencies argue that "events have taken place during the pendency of the appeal that make it impossible" for our court to grant "effective relief" on many of Weiss's claims. *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (internal quotation marks omitted). Weiss originally sought to halt the development project and have it declared illegal, but the project is now largely finished. (The district court denied Weiss's motion for a temporary restraining order and preliminary injunction, and Weiss chose not to appeal the denial.) The golf course is now constructed and open. The new parkland has been completely, or almost completely, improved. Therefore, the agencies say, the damage (to the extent there is any) has already been done; we are without power to stop it.

Thus, the agencies say, Weiss's National Environmental Policy Act claims are moot. Under the statute, before a federal agency can approve a major project, the agency must predict the project's environmental consequences. Weiss asks us to order the agencies to redo their predictions. By now, however, those predictions are beside the point. Because the golf course is "completed and operational," the predictions have either come to pass or not. *Neighbors Organized to Insure a Sound Env't v. McArtor*, 878 F.2d 174, 178 (6th Cir. 1989). Weiss might as well ask a meteorologist on Friday to redo the Thursday forecast. Her claims under the National Environmental Policy Act are moot.

For similar reasons, Weiss's claims under the National Historic Preservation Act are also moot. She argues that the Park is eligible for listing on the National Register of Historic Places, and so the agencies should have followed additional procedures before approving the project. *See* 16

U.S.C. § 470f. But any effects on the Park's historic character have already occurred. Because "construction on the [golf course] has been substantially completed," we cannot give any "meaningful relief" and any declaratory judgment "would be an advisory opinion." *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 397 (5th Cir. 2000).

These two claims are moot as a result of "the unilateral action of the party who prevailed in the lower court," *Coalition*, 365 F.3d at 485 (internal quotation marks omitted); that is, they are moot because of the defendants' actions. As to these two claims, therefore, we "vacate the judgment below and remand with a direction to dismiss." *Id.*

C.

Weiss is left with two claims that we can adjudicate. Both concern the National Park Service's compliance with other provisions of the Land and Water Conservation Fund Act. In assessing these claims, "we do not defer to the district court's decision, but instead review the administrative decision as if we were the first reviewing court." *Meister*, 623 F.3d at 370. We uphold the agency's decision unless it is arbitrary or capricious. *Id.*

First, Weiss says that the National Park Service acted arbitrarily in finding that the new parkland that the City received in the land swap had a "usefulness and location" that was "reasonably equivalent" to the leased portion of the Park. 16 U.S.C. § 460*l*-8(f)(3). But the statute and regulations deem all newly-acquired wetlands to have reasonably equivalent usefulness with exchanged recreational property. *See id.*; 36 C.F.R. § 59.3(b)(3)(i). And, per the land swap here, the City received at least one acre of nearby wetlands for each acre of the old Park it gave up. Per the plain terms of the statute and regulations, that defeats Weiss's reasonable-equivalence claim.

Weiss also claims that the agencies violated another provision of the Land and Water Conservation Fund Act. Specifically, she argues that the project was not "in accord with" Michigan's Outdoor Recreation Plan, which divergence would violate the Act. *See* 16 U.S.C. § 460*l*-8(f)(3). The district court held, as an alternative to its holding that Weiss lacked standing, that Weiss's claim failed on the merits. This alternate holding is correct.

Weiss initially misreads the regulations to require that both properties—the one taken out of recreational use and the one brought into recreational use—serve uses listed in the state Plan after the project is finished. In fact, the regulations merely require the "proposed conversion and substitution"—i.e., the land swap—to be "in accord" with the Plan. 36 C.F.R. § 59.3(b)(9).

So we consider whether the swap was in accord with the Plan. Weiss contends that the swap does not meet one of the Plan's goals: preserving natural spaces. But the Service is not required to find that every land exchange perfectly meets every goal. The point of the requirement that the exchange accord with the Plan is to create recreational opportunities that fit with the state's overall scheme (for example, by avoiding needless duplication). And the Service found that the swap met some of the Plan's important goals: creating better links between trails, improving recreation facilities near a population center, and restoring impaired recreation spaces. The Service did not act arbitrarily in finding that exchanging underused parkland for new trails was consistent with Michigan's Comprehensive Outdoor Recreation Plan.

*       *       *

We vacate the district court's judgment on Weiss's National Environmental Policy Act and National Historic Preservation Act claims, and remand with instructions to dismiss those claims as moot. We otherwise affirm.