NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0096n.06

No. 24-1783

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 25, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| GOTION, INC., | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| GREEN CHARTER TOWNSHIP, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

PER CURIAM. Green Charter Township entered into a Development Agreement with Gotion, Inc., in which it committed to assist Gotion in constructing a battery component manufacturing plant within township boundaries. Voters in the Township responded to the plans by recalling the Township Board. The newly elected Board immediately began to undermine the Development Agreement by rescinding resolutions supporting the project. Gotion sued for breach of contract and sought injunctive relief. The district court granted Gotion a preliminary injunction, and Green Charter Township appealed. After the filing of the appeal, however, the State of Michigan informed Gotion that it was in default on obligations necessary to obtain funding central to the project's viability. Given the default, Gotion admits that the battery plant is no longer viable. Accordingly, Gotion's claim for injunctive relief is now moot, so we DISMISS the appeal and REMAND to the district court for further proceedings.

I.

In 2022, Congress passed the Inflation Reduction Act. The Act's tax incentives prompted over $110 billion of capital investment in clean energy manufacturing. The Michigan Legislature then passed a series of laws ambitiously aimed at achieving 100% carbon neutrality by 2050. Gotion, Inc.—the American subsidiary of one of the largest electric vehicle battery manufacturers in the world—capitalized on these measures, working with state and local governments to plan a battery component manufacturing plant (the "Project") within Green Charter Township in Mecosta County, Michigan.

In September 2022, Gotion secured several grants from Michigan "to facilitate land acquisition, public infrastructure improvements, engineering, permitting, wetland mitigation, and other associated costs in support of the Project." *Gotion, Inc. v. Green Charter Township*, No. 1:24-CV-275, 2024 WL 3179212, at *1 (W.D. Mich. May 17, 2024). Soon thereafter, the Township's seven-member Board unanimously adopted Resolution No. 01-122022 ("Support Resolution"). *Id.* at 2. The Support Resolution "strongly support[ed] efforts to bring Gotion" to the Township and pledged to "make every effort to work in the interests of our constituents and community by assisting Gotion, Inc. in their efforts to join our community." R. 1-2, Support Res., PageID 38. To attract Gotion to the area, the Township, Mecosta County, and the City of Big Rapids offered a tax incentive package totaling $540 million. *Gotion*, 2024 WL 3179212, at *1. The Support Resolution and tax incentives proved successful. In July 2023, Gotion selected a site within the Township from among 56 competing locations. Gotion chose this site to reap the combined $715 million in tax incentives and public grants offered by the state and local governments. Gotion intended to invest over $2.36 billion into the Project and employ about 2,350 individuals, paying them, on average, 150% of Mecosta County's average hourly rate.

To secure grants from the State, Gotion had to enter into agreements ensuring that it would complete all the Project's public infrastructure improvements and site development plans within a certain time frame. Failure to make timely progress on the Project would constitute an "[e]vent of [d]efault" on the agreements, which would permit Michigan to suspend or terminate the grants, require repayment, or place a freeze on project funds. R. 1-3, Grant Agmt., PageID 51, 56.

To secure support from the Township, Gotion negotiated the Development Agreement, which the Township Board adopted during a Board meeting in August 2023. The Development Agreement requires the Township to, among other things, help Gotion obtain permits for the Project. It states that the Township shall:

> assist Gotion, to the extent legally permissible, in obtaining or causing to obtain any licenses, permits, or other governmental authorizations necessary to advance the Project and conduct business to support the Project, for which the failure to obtain such licenses, permits, or other governmental authorizations is reasonably likely to materially and adversely affect the Project (financially or otherwise), or impair Gotion's ability to perform its obligations under this Agreement.

R. 1-1, Dev. Agmt., PageID 26. The Agreement further provides that any "material failure" to comply with the Agreement by either party constitutes an "[e]vent of [d]efault," which permits "the non-breaching Party" to, "after expiration of any applicable Cure Period without a cure, . . . exercise an[y] other available remedy at law or equity." *Id.* at 28. The same month that the parties entered into the Development Agreement, Gotion bought nearly 270 acres in the Township for the Project site at a cost of $24,000,000. *Gotion*, 2024 WL 3179212, at *4.

But many members of the community were unhappy. In late 2022 or early 2023, community members began to organize a campaign to recall the Township's Board because of its support for the Project. Two Board members resigned and were replaced in the summer of 2023, before the recall election. The remaining members were ousted by a recall election in November 2023. All five replacement Board members campaigned on blocking the Project. Upon taking

office in November 2023, the new Board immediately commenced its efforts to halt the Project. After the new Board rescinded two resolutions that were necessary to move the Project forward, Gotion notified the Township that it had breached the Development Agreement and asked it to cure the breach by reinstating the two rescinded resolutions. The Township refused and denied that it had breached the Development Agreement.

After receiving the Township's refusal letter, Gotion publicly announced its intent to submit the Project site plan to the Mecosta County Planning Commission for approval; and it submitted the application soon after. Green Charter responded by holding a special Board meeting at which it stripped Mecosta County of its zoning authority over the Township. The Township then sent Mecosta County a letter threatening to sue if it processed Gotion's outstanding site-plan application; the County then cancelled its scheduled review of the application.

Gotion responded in mid-March 2024 by suing the Township for breach of the Development Agreement and seeking declaratory and injunctive relief. In May 2024, the district court granted Gotion's request for a preliminary injunction. *Gotion*, 2024 WL 3179212, at *12. The court held that Gotion would likely succeed on the merits of its breach-of-contract claim. *Id.* at *8–10. And the court determined that the "current record more than amply supports a showing of irreparable harm to Gotion absent injunctive relief." *Id.* at *11. It reasoned that Gotion would suffer "significant monetary and contractual harms" if the Project, "an extensive undertaking with coordinated construction processes, were to continue to be delayed" by the Township's refusal to follow the Development Agreement and that these harms could not be remedied with money damages because damages would be difficult to calculate and would "far exceed the Township's ability to pay." *Id.* at *10–11. The court thus ordered the Township to comply with its contractual obligations under the Development Agreement.

-4-

The Township appealed. The district court stayed its proceedings pending appeal but kept the preliminary injunction in place. While the appeal of the preliminary injunction was pending before this court, however, the State of Michigan deemed Gotion in default of obligations essential to the continued viability of the Project. We ordered supplemental briefing on whether Gotion's claims for injunctive and declaratory relief against the Township were moot and, if not, how these subsequent events affected Gotion's claim of irreparable harm.

II.

Under Article III of the United States Constitution, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). "[E]vents during the pendency of the litigation" may render a case or claim moot. *Id.* (quoting *Ohio v. EPA*, 969 F.3d 306, 308 (6th Cir. 2020)). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 458 (6th Cir. 2004) (citation omitted). Here, events occurring after Gotion's appeal have mooted its claim for injunction. So "we must dismiss the appeal for lack of jurisdiction." *Pavia v. Nat'l Collegiate Athletic Ass'n*, 154 F.4th 407, 412 (6th Cir. 2025).

On September 17, 2025, while this appeal remained pending, the State of Michigan sent Gotion a letter determining that Gotion had defaulted on its agreements with the State because Gotion had abandoned the Project—that is, "no Eligible Activities [had] occurred at the Property for more than one hundred twenty (120) consecutive days." *See* Michigan Strategic Fund Default Letter (Sept. 17, 2025), https://www.scribd.com/document/937338338/Letter-to-Gotion-with-Notice-of-Default. The State gave Gotion 30 days to cure the default. *Id.*; *see also* Gotion Supp.

Br. at 2. If Gotion failed to do so, the State would require immediate repayment of the nearly $24 million in State funds dispensed to Gotion. Gotion responded on October 15, disputing the alleged default and asking for more time to work out a resolution with the State. *See* Gotion Supp. Br. at 2; Gotion Response to Notice of Default (Oct. 15, 2025), https://www.scribd.com/document/937338335/Gotion-response-to-notice-of-default. But it appears that no agreement ever materialized. On January 30, 2026, the State demanded that Gotion return the $23.7 million in State funds. *See* David Shepardson, *Michigan AG asks Chinese battery maker Gotion to return $23.7 million after defaulting on US plant*, Reuters (Jan. 30, 2026), https://www.reuters.com/world/china/michigan-ag-asks-chinese-battery-maker-gotion-return-237-million-after-2026-01-30/.

Gotion concedes that the State's funding, which could have totaled $175 million, was central to the Project's viability and to its request for injunctive relief. Gotion Supp. Br. at 6. In this litigation, Gotion claimed that, absent an injunction requiring the Township to follow the Development Agreement and support the Project, Gotion would suffer "irreparable harm . . . arising from cascading delays in the Project timeline." Appellee Br. at 18. Those cascading delays would cause Gotion to miss deadlines under its agreements with the State, which could trigger an "event of default," causing the State to "suspend grant disbursements, terminate the Agreement, place a freeze on Project funds, or require Gotion to repay all or a portion of the grant disbursements that have been made." *Id.* at 6.

Yet, despite having obtained a preliminary injunction, and with no stay in place, Gotion nonetheless missed the State-imposed deadlines, imperiling the Project. And, as Gotion now admits, the Project is dead. According to Gotion, it "is not blind to the reality of its project given the current situation in the Township: The project that Gotion worked diligently, and in good faith

to complete, to bring jobs and income to the people of the Township, *is no longer viable* and threatens the ability of either party to perform pursuant to the injunction." Gotion Supp. Br. at 4 (emphasis added); *see also id.* at 7 ("Gotion is not blind to the practical impact of the [State's] Notice of Default to the future of Gotion's project in Michigan. . . . The current reality makes it exceedingly difficult, if not practically impossible, to proceed even with the current injunction in place."). Because Gotion cannot proceed with the Project without State funding, injunctive relief requiring the Township to support the Project in accordance with the Development Agreement "would lack any practical effect." *Ohio*, 969 F.3d at 308. So the claim for injunctive relief is moot. *Id.*; *see also Resurrection Sch.*, 35 F.4th at 528–30.

Gotion says that the preliminary injunction remains necessary because "without injunctive relief, the Township may continue to feel emboldened to take obstructive actions that would annihilate any speck of hope that Gotion's project could proceed." Gotion Supp. Br. at 6. But, even if we assume that the Township would obstruct a future plant, a mere unexplained "speck of hope" that Gotion might resurrect the Project is not enough to warrant an injunction. *Id.* "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," but only "so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). When that substantial and imminent risk disappears, the claim for injunctive relief becomes moot. *Ohio*, 969 F.3d at 310 (noting that to avoid a finding of mootness, challenged "conduct must be 'reasonably' likely to recur[,] mean[ing] that there must be a fair prospect that the conduct will recur in the foreseeable future"). Here, the injunction requires the Township to, for example, help Gotion obtain necessary permits to construct and supply water to a plant that Gotion has no current plans to build. Such an injunction can provide Gotion with no "meaningful relief." *Weiss v. Sec'y of U.S. Dep't of Interior*,

459 F. App'x 497, 500 (6th Cir. 2012) (dismissing claims seeking to enjoin construction of a golf course that had already been "constructed and open[ed]"). Its claim for injunctive relief is therefore moot.

There are, of course, two prominent exceptions to the mootness doctrine. Neither applies here. First, "a defendant's 'voluntary cessation' of challenged conduct moots a case only if there clearly is 'no reasonable expectation that the alleged violation will recur.'" *Resurrection Sch.*, 35 F.4th at 528 (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)). There hasn't been voluntary cessation in this case. Indeed, Gotion says there has been the opposite—it says the Township's continued vehement disapproval and obstructionism led to Gotion's alleged default. Second, a case is not moot if the issue is capable of repetition yet evading review. *Id.* at 530. That exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (citation omitted). Here, the Project "is no longer viable," and Gotion has been asked to repay millions of State funding. Gotion Supp. Br. at 4. There is no chance that this issue will arise again between Gotion and the Township.

Perhaps sensing the writing on the wall, Gotion pivots to a new form of relief: "Given the different reality in the Township that Gotion faces today, Gotion believes that its claims instead require a different remedy, and will likely seek to amend its complaint to add a demand for monetary damages from the Township as a result of the Township's breach." Gotion Supp. Br. at 5. Proceedings in the district court have been stayed while the Township appealed the district court's award of a preliminary injunction. And we pass no judgment on whether Gotion may amend its complaint to add a new form of relief. The only thing that matters for this appeal is that

Gotion's claim for injunctive relief is moot. *Resurrection Sch.*, 35 F.4th at 530. The rest we leave to the district court to resolve on remand. *Cf. N.Y. St. Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 339 (2020) (per curiam).

* * *

We DISMISS the appeal as moot and REMAND to the district court for further proceedings.